# Exhibit A

Mitchell J. Kassoff
Attorney at Law
Two Foster Court
South Orange, New Jersey 07079-1002
(973) 762-1776
franchiselawyer@verizon.net
Attorney for Plaintiff

---

| | |
|---|---|
| The Business Store, Inc., | SUPERIOR COURT OF NEW JERSEY LAW DIVISION- MIDDLESEX COUNTY Docket No. |
| Plaintiff, | |
| v. | Civil Action |
| Mail Boxes Etc., Inc. and United Parcel Service, Inc., | **SUMMONS** |
| Defendants. | |

---

*From The State of New Jersey, To the Above Named Defendants:*

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to the summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received the summons, not counting the date you received it. The address of the deputy clerk of the Superior Court for Middlesex County is Middlesex County Courthouse 2nd Floor Tower, 56 Paterson Street, P. O. Box 2633, New Brunswick, N.J. 08903. A filing fee payable to the Clerk of the Superior Court and a complete Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiffs' attorney whose name and address appears above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with a fee of $110 and a completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford attorney, you may call the Legal Services office in the county in which you live. In Middlesex County the telephone number is (732) 249-7601.

If you do not have an attorney and are not eligible for free legal assistance, you maintain

obtain a referral to attorney by calling the Lawyer Referral Service.  The telephone number for Middlesex County is (732) 828-0053.

JENNIFER PEREZ
Clerk of the Superior Court

*Dated* April 13, 2011

*Name and addresses of defendants to be served*:

Mail Boxes Etc., Inc.- 6060 Cornerstone Court West, San Diego, CA 92121-3795.
United Parcel Service, Inc.- 55 Glenlake Parkway, NE, Atlanta, GA  30328.

2

Mitchell J. Kassoff
Attorney at Law
Two Foster Court
South Orange, New Jersey 07079-1002
(973) 762-1776
franchiselawyer@verizon.net
Attorney for Plaintiff

---

| | |
|---|---|
| The Business Store, Inc.,<br><br>               Plaintiff,<br><br>v.<br><br>Mail Boxes Etc., Inc. and United Parcel Service, Inc.,<br><br>               Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION- MIDDLESEX COUNTY<br>Docket No.<br><br>Civil Action<br><br>**COMPLAINT AND JURY DEMAND** |

---

Plaintiff The Business Store, Inc. ("The Business Store"), a New Jersey corporation with its address being 6 Laila Court, Monroe Township, New Jersey 08831, by way of Complaint against Defendants Mail Boxes Etc., Inc., ("MBE") and United Parcel Service, Inc. ("UPS") alleges as follows.

## THE PARTIES

1.    The Business Store has been a Mail Boxes Etc franchisee since March 2004.

2.    The Business Store had three locations, which were:

a.    Store #4925- 426 Main Street, Spotswood (County of Middlesex), New Jersey 08884.

b.    Store #5903- 293 Route 18, East Brunswick (County of Middlesex), New Jersey 08816.

c.    Store #5315- 881 Main Street, Sayreville (County of Middlesex) New Jersey

08872.

      3.     On or about February 3, 2011 due to the actions and inactions of Defendants all three locations were closed.

      4.     Upon information and belief, MBE is a Delaware corporation.

      5.     Upon information and belief, MBE does business in the State of New Jersey.

      6.     Upon information and belief, UPS is a Delaware Corporation.

      7.     Upon information and belief, UPS does business in the State of New Jersey.

      8.     Upon information and belief, MBE is a subsidiary of UPS.

      9.     Franchises sold by MBE conduct business under The UPS Store® name.

      10.    The UPS Store® trademark is owned by United Parcel Service of America, Inc.

      11.    United Parcel Service of America, Inc. is a subsidiary of UPS.

      12.    Upon information and belief, UPS is connected with the franchising provided by MBE.

      13.    Upon information and belief, UPS is materially involved with the franchising provided by MBE.

      14.    Upon information and belief, UPS controls the franchising provided by MBE.

      15.    Upon information and belief, UPS is and/or was connected with the selection of prospective franchisees, included but not limited to, Plaintiff, by MBE.

      16.    Upon information and belief, UPS is and/or was involved with the preparation of the Uniform Franchise Offering Circular provided to MBE franchisees, including but not limited to, Plaintiff.

2

17.    Upon information and belief, UPS is and/or was involved with the preparation of the Franchise Agreement to be executed by MBE franchisees, including but not limited to, Plaintiff.

18.    Upon information and belief, UPS is and/or was involved with the finances of the MBE franchise system.

19.    Upon information and belief, UPS controls or did control the finances of the MBE franchise system.

20.    Upon information and belief, UPS is and/or was involved with the standards of the MBE franchise system.

21.    Upon information and belief, UPS controls or did control the standards of the MBE franchise system.

22.    Upon information and belief, UPS is and/or was involved with the selection of persons or businesses to be used by the franchisees of the MBE franchise system, including but not limited to, Plaintiff.

23.    Upon information and belief, UPS is and/or was involved with the overview of persons or businesses to be used by the franchisees of the MBE franchise system, including but not limited to, Plaintiff.

24.    Upon information and belief, UPS is and/or was involved with the selection of agents who would work with the franchisees of the MBE franchise system, including but not limited to, Plaintiff.

25.    Upon information and belief, UPS is and/or was involved with the overview of agents who would work with the franchisees of the MBE franchise system, including but not limited to, Plaintiff.

3

26.     Upon information and belief, UPS is and/or was involved with obtaining new Mail Box Etc. and/or The UPS Store franchisees, including but not limited to, Plaintiff.

27.     Upon information and belief, UPS is and/or was involved with franchising Mail Box Etc. and/or The UPS Store franchises, including but not limited to, Plaintiff' franchise.

28.     Upon information and belief, UPS is and/or was involved with selecting the location of MBE franchises, including but not limited to, Plaintiff' franchise.

29.     Upon information and belief, UPS is and/or was involved with the initial aspects of setting up Mail Box Etc. and/or The UPS Store franchises, including but not limited to, Plaintiff' franchise.

30.     Upon information and belief, UPS is and/or was involved with the operation of setting up Mail Box Etc. and/or The UPS Store franchises, including but not limited to Plaintiff' franchise.

31.     Upon information and belief, UPS is and/or was involved with the operation of Mail Box Etc. and/or The UPS Store franchises, including but not limited to Plaintiff' franchise.

32.     Upon information and belief, UPS has and/or had control over MBE.

33.     Upon information and belief, UPS has and/or had influence over MBE.

34.     Upon information and belief, UPS has and/or had control over MBE's franchise system.

35.     Upon information and belief, UPS has and/or had influence over MBE's franchise system.

36.     UPS is responsible for the actions of MBE.

37.     UPS is responsible, along with MBE, for the damages sustained by Plaintiff.

4

38.     Section 56:10-10 of the New Jersey Franchise Practices Act states that "[a]ny franchisee may bring an action against its franchisor for violation of this act in the Superior Court of the State of New Jersey to recover damages sustained by reason of any violation of this act and, where appropriate, shall be entitled to injunctive relief. Such franchisee, if successful, shall also be entitled to the costs of the action including but not limited to reasonable attorney's fees."

39.     Based upon Section 56:10-10 of the New Jersey Franchise Practices Act, venue is proper in this Court.

## STATEMENT OF CASE AND FACTS COMMON TO ALL CLAIMS

40.     This is an action to damages caused by the actions and inactions of Defendants to Plaintiff.

41.     In the fourth quarter of 2003 Dana F. Harris and Jennifer D. Harris (the owners of Plaintiff, "Harris") were exploring various franchise opportunities and filled out an online application for information on The UPS Store franchise.

42.     Lawrence Dimino, the Area Franchisor of The UPS Store stated that there were two immediate opportunities available in New Jersey, Spotswood and Monroe, that they were both owned by Renaissance Properties and they should make a decision as soon as possible since there were other interested parties.

43.     Harris was told that these opportunities would be brand new stores.

44.     Harris inquired whether it would be financially sound to purchase a brand new store as opposed to an existing store with a proven sales record and customer base.

45.     Lawrence Dimino responded that there were no such stores available and in any event, a brand new store in either one of those two locations would be a gold mine.

5

46.     Defendants' Uniform Franchise Offering Circular stated on page 46 that "[w]e estimate that the typical length of time between the signing of the Franchise Agreement and the opening of the franchised business will be 60 to 90 days (immediately if you are renewing or signing the Franchise Agreement in connection with a transfer). Factors which may affect this time period include Center design approvals, the ability to procure and install equipment and computers, make acceptable financing arrangements, obtain any required approvals and zoning and building permits, as well as resolve other factors bearing on construction."

47.     The UPS Store #4925 located in Spotswood opened two (2) years after all requested monies were paid to MBE.

48.     Mr. Lawrence Dimino, Area Franchisee, was in contact with the landlord and was fully aware that the store would not have been ready in 90 days and refused to refund The Business Store its payment to Defendants.

49.     Additional personal financial information was requested from Mr. Dimino together with a request to perform a credit check.

50.     Mr. Dimino stated that in order to go forward, a deposit of $7500 was required. This was provided.

51.     Mr. Dimino arranged for Harris to meet with the landlord, Renaissance Properties.

52.     At that meeting Harris was told by the landlord that the plaza, later to be called Renaissance Square, would be completed by summer of 2004.

53.     After further discussion with Mr. Dimino, he suggested that Harris make an immediate deposit to secure the location as it would be ready by summer of 2004.

54.     Harris made the deposit of $6,650.00 on or about February 28, 2004.

55.     On or about March 1, 2004, Harris was contacted by Mr. Dimino, who stated that payment of the following were needed by the end of the month:

6

| a. | Franchise Fee | $29,950 |
| b. | Grand Opening Fee | $ 2,500 |
| c. | Design Fee | $   950 |
| d. | Training | $ 2,750 |
| e. | Less Prepaid | $ (7,500) |

56. Check #1007 dated March 25, 2004, in the amount of $29,650 was issued to Mail Boxes, Etc., and given to Mr. Dimino.  He also requested a second check payable to his firm, LT Partnership LLC, in the amount of $750 for final training, which was provided.

57. In the summer of 2004, Harris contacted Mr. Dimino to inquire about the status of the store since Harris had not heard from him since March 2004.

58. Mr. Dimino told Harris that the store would now be ready for the busy holiday season beginning in October 2004.

59. In October 2004, Harris contacted Mr. Dimino and expressed as to the failure of the store to be opened.

60. Despite Harris investing in excess of $40,000, the store was yet to be built.

61. In December 2004, Harris contacted Mr. Dimino and requested a full refund due to the failure of MBE to have a store ready for operation.

62. MBE refused to provide the demanded refund.

63. In March 2005, Harris was contacted by Mr. Dimino and was told that the plaza would be definitely completed by summer 2005 and Harris needed to pay the Center Development Fee of $5,000.

64. Harris issued check #1014 on March 9, 2005 in the amount of $5,000.

7

65.     In May 2005, Harris was contacted by Mr. Dimino's partner, Thomas Heinz, who demanded payment for a Design Fee.

66.     Check #1017 dated May 6, 2005 was in the amount of $1,820.

67.     Another check #1018 dated May 6, 2005 was in the amount of $4,345.50 for The UPS Store exterior sign.

68.     On or about October 17, 2005, Mr. Dimino demanded the following payments, which were paid:

|   |   |   |   |
|---|---|---|---|
| a. | Triumph Enterprise – Training | $2,000.00 | check #1025 |
| b. | AlumaTek – Security Gate | $3,810.00 | check #1026 |
| c. | Lee Kaufman – Carpet | $2,199.15 | check #1027 |
| d. | Mail Boxes – Fixtures | $15,929.05 | check #1028 |

69.     At the end of October 2005, Harris contacted Mr. Dimino to ascertain when the store would finally open.

70.     It was important that Harris did not miss the holiday season since a considerable amount of the annual income is earned during this period.

71.     Harris had invested a considerable sum of money since Harris met MBE's agent in 2003 and had yet to realize any return on our investment after almost two years.

72.     Mr. Dimino stated that the store would be ready for the Christmas season.

**73.**     Despite what Mr. Dimino stated, the store was not opened for the Christmas season and in fact did not open until March 13, 2006.

74.     This was almost three years after Harris paid his money to MBE for his franchise. March 13, 2006, after almost three years, the store was finally opened.

8

75.   Prior to selling the franchise to The Business Store Defendants knew that the revenue from the anticipated customers was not sufficient to offset the operating costs.

76.   The Business Store located an additional client (TNG Enterprises) to increase revenues, but to obtain this business had to offer a 25% discount off the retail shipping price.

77.   Defendants never told The Business Store that it would have to offer discounts to remain in business.

78.   Harris was approached by the Area Franchisor, Mr. Lawrence Dimino, to purchase five additional The UPS Store locations in Monroe, New Brunswick, East Brunswick, Somerset and Sayreville.

79.   Harris informed Mr. Dimino that they did not have the experience or resources to purchase these five additional locations.

80.   Mr. Dimino was relentless and informed Harris that if we did not purchase, at least, the East Brunswick, New Brunswick and Sayreville locations Harris would lose sales.

81.   Mr. Dimino stated further that since those locations were close to Spotswood this would result in the failure of the Spotswood location.

82.   Based upon Mr. Dimino's relentless pressure and the threat that Harris's store would fail, Harris agreed to purchase the East Brunswick location.

83.   Mr. Dimino advised Harris that the Sayreville store would be profitable within three months.

84.   Prior to the purchase of the Sayreville store Harris was informed that the back rents for the Sayreville store would be waived.

85.   Prior to the purchase of the Sayreville store Harris was informed that MBE would waive any unpaid royalties due prior to the transfer of the store to Harris.

9

86.     Through the insistence and pressure of Mr. Dimino, Harris applied through MBE for the purchase of the East Brunswick and Sayreville locations.

87.     Harris had to borrow substantial sums of money to finance the purchase of the additional stores.

88.     The Sayreville location was opened on April 2007.

89.     The East Brunswick location was opened in June 2007.

90.     In the summer of 2007, Multi Media Enterprises, a large account, filed for bankruptcy.

91.     MBE refused to refund royalties paid by The Business Store even though the money was not collected upon which the royalties were based.

92.     In the summer of 2007, TNG Enterprises, The Business Store's major customer relocated their warehouse to Texas.

93.     After a couple of late/unpaid invoices, The Business Store informed TNG Enterprises that The Business Store would not be doing further business with them and that they should cease shipping through The Business Store's account.

94.     Defendants were also notified that TNG Enterprises were not to use The Business Store's account.

95.     Despite The Business Store's instructions to both TNG Enterprises and Defendants, during the 2007 holiday season TNG Enterprises used The Business Store's account fraudulently and accumulated UPS charges in excess of $100,000.00.

96.     Despite Defendants being notified that TNG Enterprises was not to use The Business Store's account, Defendants demanded that The Business Store be responsible for the loss due to TNG Enterprises non-payment of their shipping bills.

10

97.     Defendants further stated that The Business Store's right to handle UPS packages would be terminated if The Business Store did not pay royalties due for TNG Enterprises shipping bills, which payment was never received by The Business Store.

98.     Defendants repeated this threat on a weekly basis.

99.     To stay in business, The Business Store made the payments to Defendants due to the threats made by Defendants.

100.    Defendants came to audit Harris's stores.

101.    The Business Store provided several boxes of documents for the audit, which the auditor refused to read.

102.    Several weeks after this audit, The Business Store received a bill from MBE requesting payment of an additional $80,000 in royalties.

103.    Defendants were told that the additional $80,000 in royalties allegedly due for royalties was impossible.

104.    Defendants were told that The Business Store had overpaid royalties.

105.    Defendants were told that $80,000 in royalties would equate to an additional $940,000 in sales, which The Business Store had not made.

106.    Defendants continued to harass The Business Store for this unsubstantiated amount continued throughout 2009.

107.    In June 2010, Defendants improperly stopped paying The Business Store for corporate accounts and drop offs.

108.    Besides making substantial investments, The Business Store has paid MBE huge fees to operate the franchise.

11

109.    Defendants' Uniform Franchise Offering Circular stated on page 58 (Item 19) that "MBE does not furnish or authorize its salespersons to furnish any oral or written information concerning the actual or potential sales, costs, income or profits of Centers. Actual results vary from Center to Center and MBE cannot estimate the results of any particular Center.

110.    Despite that statement, Mr. Lawrence Dimino repeatedly disclosed The Business Store's financial information to prospective buyers recommended by The Business Store in an effort to dissuade them from purchasing The Business Store's stores.

111.    Mr. Dimino would instead try to persuade the prospective buyer to purchase another store where he had a personal gain.

112.    Defendants' Uniform Franchise Offering Circular stated in footnote 7 on page 26 that "[i]f and when you wish to sell your Center, you will be permitted — but not required — to retain the services of MBE to assist in your efforts to identify potential purchasers of your Center. If you do so, you would be required to sign a nonexclusive finder's agreement with MBE; i.e., non-exclusive meaning that you may simultaneously retain others to assist you in such efforts. Such agreement with MBE would provide that, under certain circumstances, you would be required to pay to MBE, at the time of closing from escrowed sales proceeds, a 'Non-Exclusive Finder's Fee'. [sic]  The amount of this fee would be the greater of $11,980 or ten percent (10%) of your Center's sales price. Once again, you are only required to pay this fee if you voluntarily decide to retain MBE for these types of supplemental services."

113.    Mr. Lawrence Dimino repeatedly requested The Business Store to sign a "Non-Exclusive Finder's Fee" document for the sale of the Sayreville location.

114.    Mr. Dimino owns and operates a realty company (LT Partnership/Triump Enterprises) and through that company he would sell The UPS Stores.

12

115.    Since The Business Store did not sign such an agreement with Mr. Dimino, all prospective buyers were either given false financial information or encouraged to purchase other stores.

116.    Despite The Business Store's personal and financial commitment to its franchise, The Business Store has engaged in a pattern of harassment against The Business Store and Harris for many years.

117.    Defendants improperly and without authority obtained information and data from The Business Store's computer.

118.    Defendants have failed to provide accountings demanded by The Business Store.

## COUNT ONE

(Monetary Damages and Attorneys' Fees pursuant to the New Jersey Franchise Practices Act)

119.    The Business Store repeats the preceding allegations as if set forth at length herein.

120.    The Business Store maintained a place of business within the State of New Jersey.

121.    Gross sales of products or services between The Business Store and Defendants have exceeded $35,000 for the past 12 months.

122.    More than 20% of The Business Store's gross sales were derived from the franchise.

123.    On February 2, 2011 Defendants terminated The Business Store's franchise.

13

124.   Section 56:10-5 of the New Jersey Franchise Practices Act requires a franchisor to provide notice "*to the franchisee* at least 60 days in advance of such termination, cancellation, or failure to renew [a franchise] . . ." (with two exceptions which do not apply to this case).  [Emphasis added].

125.   Defendants did not send the required 60 day notice of termination to The Business Store.

126.   The Business Store had less than 60 days actual knowledge of Defendants' proposed termination of its franchise.

127.   The Business Store never received a notice of termination of its franchise.

128.   Despite Defendants not sending a notice of termination to The Business Store, Defendants contacted The Business Store's landlord and told the landlord that The Business Store was no longer a franchisee.

129.   Based upon Defendants' improper actions, The Business Store was improperly locked out of its location.

130.   Based upon Defendants' improper actions, The Business Store has been unable to make any money from that point forward.

131.   The improper termination of The Business Store's franchise by Defendants has caused The Business Store to lose its entire investment in the franchise and all profits it would have made for the life of the franchise.

132.   The Business Store is still liable for the rent for the location of the franchise.

133.   The Business Store is still liable for the payment of the loan incurred for the purchase, build out and operation of the franchise.

134.   Based upon Section 56:10-10 of the New Jersey Franchise Practices Act, The Business Store is entitled recovery of its damages, which are hereby demanded.

14

135.    Based upon Section 56:10-10 of the New Jersey Franchise Practices Act, The Business Store is entitled to its reasonable attorneys' fees, which are hereby demanded.

WHEREFORE, plaintiff The Business Store, Inc. demands judgment jointly and severally against Defendants as follows:

A.    Awarding The Business Store compensatory damages pursuant to Section 56:10-10 of the New Jersey Franchise Practices Act and all other provisions of the law.

B.    Awarding The Business Store its legal fees and costs pursuant to Section 56:10-10 of the New Jersey Franchise Practices Act and all other provisions of the law.

C.    Awarding The Business Store punitive damages for the improper actions and inactions of Defendants.

D.    Awarding The Business Store such further and different relief as the Court deems equitable and just.


## COUNT TWO

### (Breach of Contract)

136.    The Business Store repeats the preceding allegations as if set forth at length herein.

WHEREFORE, plaintiff The Business Store, Inc. demands judgment jointly and severally against Defendants as follows:

A.    Awarding The Business Store compensatory damages pursuant to Section 56:10-10 of the New Jersey Franchise Practices Act and all other provisions of the law.

B.    Awarding The Business Store its legal fees and costs pursuant to Section 56:10-10 of the New Jersey Franchise Practices Act and all other provisions of the law.

15

C.      Awarding The Business Store punitive damages for the improper actions and inactions of Defendants.

D.      Awarding The Business Store such further and different relief as the Court deems equitable and just.

## COUNT THREE

(Tortious Interference with Prospective Economic Advantage)

137.    The Business Store repeats the preceding allegations as if set forth at length herein.

138.    Defendants were aware or should have been aware of The Business Store' rights under which The Business Store had a reasonable expectation of economic advantage.

139.    The Business Store had arranged for the sale of more than one of its locations.

140.    Defendants actively acted against this sale.

141.    As a result of Defendants' actions, The Business Store was not able to sell its locations.

142.    Defendants willfully, knowingly, intentionally and without justification or excuse wrongfully and tortiously interfered with The Business Store' prospective economic advantage.

143.    As a result of Defendants' tortious conduct, The Business Store has been and will be damaged.

WHEREFORE, plaintiff The Business Store, Inc. demands judgment jointly and severally against Defendants as follows:

A.      Awarding The Business Store compensatory damages pursuant to Section

16

56:10-10 of the New Jersey Franchise Practices Act and all other provisions of the law.

B.      Awarding The Business Store its legal fees and costs pursuant to Section 56:10-10 of the New Jersey Franchise Practices Act and all other provisions of the law.

C.      Awarding The Business Store punitive damages for the improper actions and inactions of Defendants.

D.      Awarding The Business Store such further and different relief as the Court deems equitable and just.


## COUNT FOUR

### (Breach of Implied Duty of Good Faith and Fair Dealing)

144.    The Business Store repeats the preceding allegations as if set forth at length herein.

145.    Defendants' conduct stated, *supra*, violated Defendants' implied duty of good faith and fair dealing.

146.    As a result of Defendants' tortious conduct, The Business Store has been and will be damaged.

147.    As a result of Defendants' tortious conduct, The Business Store has been and will be damaged.

148.    The Defendants' actions constitute a breach of the implied duty of good faith and fair dealing implied in all contracts.

149.    As a result of Defendants' actions, The Business Store has been and will be damaged.

WHEREFORE, plaintiff The Business Store, Inc. demands judgment jointly and severally

17

against Defendants as follows:

       A.      Awarding The Business Store compensatory damages pursuant to Section 56:10-10 of the New Jersey Franchise Practices Act and all other provisions of the law.

       B.      Awarding The Business Store its legal fees and costs pursuant to Section 56:10-10 of the New Jersey Franchise Practices Act and all other provisions of the law.

       C.      Awarding The Business Store punitive damages for the improper actions and inactions of Defendants.

       D.      Awarding The Business Store such further and different relief as the Court deems equitable and just.

## COUNT FIVE

### (Fraud)

150.    The Business Store repeats the preceding allegations as if set forth at length herein.

151.    Defendants took the actions and statements, *supra*, knowing that they were wrong and false at that time the actions were taken.

152.    Defendants took the actions and statements, *supra*, with the intent to defraud The Business Store.

153.    Defendants took the actions and statements, *supra*, to induce The Business Store to rely upon them.

154.    The Business Store justifiably relied upon the actions and statements made by Defendants.

18

155.    The Business Store has been damaged by the actions and statements made by Defendants

WHEREFORE, plaintiff The Business Store, Inc. demands judgment jointly and severally against Defendants as follows:

A.    Awarding The Business Store compensatory damages pursuant to Section 56:10-10 of the New Jersey Franchise Practices Act and all other provisions of the law.

B.    Awarding The Business Store its legal fees and costs pursuant to Section 56:10-10 of the New Jersey Franchise Practices Act and all other provisions of the law.

C.    Awarding The Business Store punitive damages for the improper actions and inactions of Defendants.

D.    Awarding The Business Store such further and different relief as the Court deems equitable and just.

Mitchell J. Kassoff
Attorney at Law
Two Foster Court
South Orange, New Jersey 07079-1002
(973) 762-1776
franchiselawyer@verizon.net
Attorney for Plaintiff

By: _Kassoff_____
    Mitchell J. Kassoff

Dated: April 13, 2011

19

## **JURY DEMAND**

Plaintiff hereby demands a jury trial on all issues so triable.

Mitchell J. Kassoff
Attorney at Law
Two Foster Court
South Orange, New Jersey 07079-1002
(973) 762-1776
franchiselawyer@verizon.net
Attorney for Plaintiff


By: _____
     Mitchell J. Kassoff


Dated: April 13, 2011

## <u>DESIGNATION OF TRIAL COUNSEL</u>

Pursuant to R. 4:25-4, Mitchell J. Kassoff is hereby designated as trial counsel on behalf of

plaintiff.

> Mitchell J. Kassoff
> Attorney at Law
> Two Foster Court
> South Orange, New Jersey 07079-1002
> (973) 762-1776
> <u>franchiselawyer@verizon.net</u>
> Attorney for Plaintiff


By: _____
> Mitchell J. Kassoff


Dated: April 13, 2011

## **R. 4:5-1 CERTIFICATION**

The matter in controversy is not the subject of any other action pending in any other court or of a pending arbitration proceeding, and no other action or arbitration proceeding is contemplated.  To plaintiff's knowledge, no other party should be joined in this action.

> Mitchell J. Kassoff
> Attorney at Law
> Two Foster Court
> South Orange, New Jersey 07079-1002
> (973) 762-1776
> franchiselawyer@verizon.net
> Attorney for Plaintiff


By: _____
       Mitchell J. Kassoff


Dated: April 13, 2011