***NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE BUSINESS STORE, INC., | Civil Action No.: 11-3662 (FLW) |
| Plaintiff, | |
| v. | |
| | **OPINION** |
| MAIL BOXES ETC. and UNITED PARCEL SERVICES, INC., | |
| Defendants. | |

**WOLFSON, District Judge**:

      The Business Store, Inc. ("Plaintiff") entered into a series of franchise agreements ("Franchise Agreements") with Mail Boxes Etc., Inc. ("MBE") and United Parcel Service, Inc. ("UPS") (collectively "Defendants"), which permitted Plaintiff to operate three UPS franchises in New Jersey. Based upon alleged breaches of these agreements, Plaintiff initiated this suit in the Superior Court of New Jersey. After removing this case to this Court, Defendants, in the instant matter, move to transfer venue to the Southern District of California pursuant to 28 U.S.C. § 1404(a). Defendants contend, *inter alia*, that the transfer is proper pursuant to a forum selection clause in the Franchise Agreements. Challenging the validity of that clause, Plaintiff urges the Court to find that the forum selection clause is presumptively invalid under the New Jersey Franchise Practices Act (the "NJFPA"). Having weighed the relevant transfer factors, for the reasons explicated below, the Court **DENIES** Defendants' motion to transfer.

## BACKGOUND

Plaintiff is a New Jersey corporation, owned by Dana Harris and Jennifer Harris (collectively, "Owners"). *Compl.*, ¶¶ 41, 120. In late 2003, the Owners were exploring franchise opportunities with UPS and filled out an online application for information on the UPS store franchise.[1] *Id.* at ¶ 41. Following discussions with the area developer of UPS for New Jersey, Lawrence Dimino ("Mr. Dimino"), the Owners expressed interested in opening and operating a franchise store in Spotswood, New Jersey (the "Spotswood Store"). *Id.* at ¶ 42. The Owners initially sought to purchase an existing store, but invested in the only available store in New Jersey -- the Spotswood Store -- and entered into a Franchise Agreement with Defendants.[2] *Id.* at ¶¶ 45-47. To obtain the franchise and to secure the location, the Owners provided two separate deposits to Defendants in February 2004. *Id.* at ¶¶ 50-54. Thereafter, the Owners were informed that the construction of the store would be completed by the summer of 2004. *Id.* at ¶ 53. However, the construction of the store was not completed as planned, and, during the pendency of construction, Defendants requested additional payments from the Owners to comply with the Franchise Agreement. *Id.* at ¶¶ 55-57. According to the Complaint, having already invested more than $40,000, the construction of the Spotswood Store remained incomplete in October 2004. *Id.* at ¶¶ 57-60. The Owners requested a full refund from Defendants for their failure to complete the Spotswood Store as specified by the Franchise Agreement. *Id.* at ¶ 61.

---

[1] Plaintiff alleges that MBE is a subsidiary of UPS, and that franchises sold by MBE conduct business under The UPS Store name. In addition, Plaintiff alleges that UPS was involved and/or controlled the MBE franchise system. *Compl.* ¶¶ 19-37.

[2] From the copy of the Franchise Agreement for the Spotswood Store submitted for this Motion, it appears that Dana and Jennifer Harris signed this particular copy of the Agreement on March 25, 2004. *Agreement* at 50. While the execution date of that agreement is not pertinent to the analysis of this motion, Defendants contend that the Spotswood Store Franchise Agreement was entered into on May 31, 2005.

MBE refused to provide the demanded refund, but promised that the store would be completed by the summer of 2005. *Id*. at ¶ 62. Meanwhile, Defendants continued to demand additional payments for store decoration, exterior design and training. *Id*. at ¶¶ 63-68. By the end of October 2005, Plaintiff had invested an estimated $79,635.70 in the Spotswood Store. *Id*. at ¶¶ 50-68.

The Spotswood Store opened for business on March 13, 2006. *Id.* at ¶ 73. Once operational, Mr. Dimino demanded that, for reasons not pertinent for this motion, the Owners acquire additional stores to secure the Spotswood Store's sales. *Id*. at ¶ 80. Although the Owners were reluctant to purchase additional stores because they lacked experience in managing multiple stores, the Owners claim that Mr. Dimino's relentless pressure and threats forced them to acquire two more stores.[3] Subsequently, the Sayreville and East Brunswick stores were opened in April and June 2007, respectively. *Id*. at ¶¶ 88-89.

In the beginning of 2009, Defendants visited and conducted an audit of Plaintiff's stores. *Id.* at ¶ 100. Several weeks after the audit, Plaintiff received a bill from Defendants, requesting a payment of an additional $80,000 in royalties. *Id.* at ¶ 102. Plaintiff contended that the audit was erroneous and refused to make the payment. *Id.* at ¶¶ 102-03. However, MBE continued to demand the payment throughout 2009, and eventually stopped providing franchise services to Plaintiff in June 2010. *Id.* at ¶ 106. Plaintiff continued to receive written notices from Defendants, requesting payments and notifying it of a possible termination of the Franchise Agreements if the payments were not timely made. *Id.* at ¶ 116. Ultimately, MBE terminated all three Franchise Agreements in February 2011. *Id*. at ¶ 123.

---

[3] The parties entered into the Franchise Agreements for Sayreville and East Brunswick Stores on December 27, 2006, and March 30, 2007, respectively.

On April 13, 2011, Plaintiff commenced this action in the Superior Court of New Jersey, Law Division, Middlesex County. In its Complaint, Plaintiff alleges that Defendants breached the Franchise Agreements, breached their implied duty of good faith and fair dealing, tortiously interfered with Plaintiff's prospective economic advantage, and committed fraud. Plaintiff further asserts that the wrongful termination of the Franchise Agreements violated the NJFPA. *Id.* After removing this case to this Court, Defendants now move to transfer this case to the Southern District of California pursuant to 28 U.S.C. § 1404(a).

## DISCUSSION

In diversity cases, federal, not state, laws determine whether to grant a motion to transfer the case to another district. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995); *see Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 27-32 (1988). Section 1404(a) vests a district court with discretion "to adjudicate motions to transfer according to an individualized, case by case consideration of convenience and fairness." *Stewart Org.*, 487 U.S. at 23 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)). Specifically, section 1404(a) provides: "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought." 28 U.S.C. § 1404(a).

The purpose of section 1404(a) is to protect litigants, witnesses and the public against unnecessary inconvenience and expense. *Van Dusen*, 376 U.S. at 616. When deciding a motion to transfer venue, "courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of the parties, convenience of witnesses, or interests of justice)." *Jumara*, 55 F.3d at 879. Instead, courts have considered "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum." *Id.*; *see Clark v. Burger King Corp.*, 255 F.Supp. 2d

334, 337 (D.N.J. 2003). Consequently, the "analysis is flexible and must be made on the unique facts of each case." *Calkins v. Dollarland, Inc*., 117 F.Supp. 2d 421, 428 (D.N.J. 2000) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249-50 (1981)). Finally, the burden of establishing the need for transfer rests on the moving party. *Jumara,* 55 F.3d at 879.

The first step in analyzing a motion to transfer requires determining whether the proposed transferee district venue would be proper. *Clark*, 255 F.Supp. 2d at 337. If so, the court must next establish whether the transfer is in the interest of justice. *Id*. To make that determination, the court "must consider both the private and public interests [affected] by the transfer." *Id*.; *see Gulf Oil v. Gilbert*, 330 U.S. 501, 508-09 (1946) (evaluating private and public interest factors affected by transfer). The private interests include: the plaintiff's forum preference; the defendant's forum preference; "whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara,* 55 F.3d at 879 (internal citations omitted). Public factors to be considered include: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases." *Id*. at 879-80 (internal citations omitted).

### A. Propriety of Venue in Transferee District

First, this Court must consider whether this action could have been brought in the Southern District of California. Section 1391(a) of Title 28 of the United States Code provides that a civil action based on diversity may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

MBE's principal place of business is in San Diego, and therefore, MBE is deemed to reside there for venue and jurisdictional purposes. In addition, because UPS also moves to transfer this case to the Southern District of California, UPS has consented to the venue and jurisdiction in that district.[4] *See* Defendants' Brief in Support at p. 5. Accordingly, I conclude that this action could have been brought in the Southern District of California. Now, I turn to the private and public interests to determine if transfer would be in the interest of justice.

### B. Private Interests

As noted above, the private interests under *Jumara* include: the plaintiff's forum preference; the defendant's forum preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records. *Jumara*, 55 F.3d at 879. I address the pertinent factors in turn.

---

[4] It appears that the Southern District of California would also have general jurisdiction over UPS because UPS conducts its business nationwide.

### 1. The Parties' Forum Preferences

Plaintiff initiated this action in New Jersey. Courts have considered a plaintiff's choice of forum as a significant factor in any determination of a transfer request. *Shuttle v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir. 1970) (internal quotation marks omitted). A strong presumption of convenience exists in favor of a domestic plaintiff's chosen forum. *Windt v. Qwest Communications Intern., Inc.,* 529 F.3d 183, 190 (3d Cir. 2008); *Koster v. (American) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 522 (1947). This deference may be overcome only when the balance of the public and private interests clearly favors an alternate forum. *Windt,* 529 F.3d at 190.

To challenge Plaintiff's chosen forum, Defendants argue that their preference for the Southern District of California should be entitled to greater weight because all three of the Franchise Agreements contain a forum selection clause. The clause provides that "exclusive venue and jurisdiction of any suit arising [under the Franchise Agreement] shall lie within the courts of the State of California located in San Diego or within the courts of the United States of America located within the Southern District of California." Franchise Agreements at 20.1(b).

The Supreme Court has pronounced that a forum selection clause is *prima facie* valid and should be enforced. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). The Third Circuit has consistently adhered to this long-standing legal principle. *See Wall Street Aubrey Golf, LLC v. Aubrey*, 189 Fed. Appx. 82, 85 (3d Cir. 2006); *Salovaara v. Jackson Nat'l Life Ins. Co.,* 246 F.3d 289, 297-98 (3d Cir. 2001); *Demodulation, Inc. v. Applied DNA Scis., Inc.*, 2011 U.S. Dist. LEXIS 147126, at *5-7 (D.N.J. Dec. 22, 2011). Accordingly, such a clause has been considered as a significant factor that "figures centrally in the district court's calculus." *Stewart Org.,* 487 U.S. at 29. While other factors might "conceivably" militate against a transfer, the

other 1404(a) factors rarely outweigh the forum defined in a forum selection clause because that forum represents the parties' agreement as to the most proper forum. *Id*. Therefore, courts will place great weight on valid forum selection clauses "unless the resisting party makes a strong showing that the clause is unreasonable." *Jumara*, 55 F.3d at 880; *Bremen*, 407 U.S. at 10; *Cadapult Graphic Systems, Inc. v. Tektronix, Inc.*, 98 F.Supp. 2d 560, 564 (D.N.J. 2000). To show that a forum selection clause is unreasonable, the resisting party must establish:

> (1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable.

*Cadapult,* 98 F.Supp. 2d at 565 (quoting *Coastal Steel Corp. v. TilghmanWheelabrator Ltd*., 709 F.2d 190, 202 (3d Cir. 1983)); *Union Steel America Co. v. M/V Sanko Spruce*, 14 F.Supp. 2d 682, 686 (D.N.J. 1998).

Here, relying on the public policy rationale set forth by the New Jersey Supreme Court in *Kubis & Persyzky Assoc., Inc. v. Sun Microsystems, Inc*, 146 N.J. 176 (1996), Plaintiff argues that the Court should deem the forum selection clause invalid because its enforcement would violate New Jersey public policy in light of the NJFPA. In *Kubis*, the plaintiff brought a claim against a franchisor in New Jersey state court alleging a violation of the NJFPA. *Id*. at 180. That violation arose from the wrongful termination of the parties' agreement by the franchisor. *Id*. Although the franchise agreement contained a forum selection clause, the Court refused to enforce it based on public policy grounds. *Id*. at 207-08. The Court reasoned:

> a forum-selection clause can materially diminish the rights guaranteed by the Franchise Act because the franchise must assert those rights in an unfamiliar and distant forum, with an out-of-state counsel, and bear the added expense of litigation in the franchisor's designated forum . . . .

> In such an event, the inevitable result would be to limit severely the availability of New Jersey courts as a forum for the enforcement of franchisee's claims under the Act, a result the legislature assuredly would find intolerable….
>
> The added expense, inconvenience, unfamiliarity of litigating claims under the Act in a distant forum could, for some marginally financed franchisees, result in the abandonment of meritorious claims that could have been successfully litigated in a New Jersey court. Although the legislature expressly has prohibited the use of forum-selection clauses only in motor-vehicle agreements, we entertain little doubt that the legislature would prefer to extend that prohibition to other franchisees rather than to permit forum-selection clauses to thwart the vindication of franchisees' rights under the Act.

*Id*. at 194-96. With these concerns in mind, the Court held that in cases related to the NJFPA, forum selection clauses are "presumptively invalid because they fundamentally conflict with the basic legislative objectives of protecting franchisees from the superior bargaining power of franchisors and providing swift and effective judicial relief against franchisors that violate the Act." *Id.* at 193.

Importantly, after *Kubis*, courts have applied its rationale only in NJFPA cases where a plaintiff asserts a valid claim under the NJFPA, particularly in the context of a claim for wrongful termination of a franchise agreement. *See Cadapult*, 98 F.Supp. 2d at 566; *Bonanno v. Quiznos Master LLC*, No. 06-01415, 2006 U.S. Dist. LEXIS 85131 (D.N.J. 2006); *Goldwell of N.J., Inc. v. KPSS, Inc.*, 622 F.Supp. 2d 168 (D.N.J. 2009); *Anytime Fitness, Inc. v. Reserve Holdings, LLC*, No. 08-4905, 2008 U.S. Dist. LEXIS 123209, at *9 (D. Minn. Sep. 12, 2008); *Forum Selection Clauses in Contracts Governed by the New Jersey Franchise Practices Act Are Presumptively Invalid,* 28 Seton Hall L. Rev. 213 (1997).

As a threshold issue, to qualify for the NJFPA's protections, the following requirements specified in N.J.S.A. 56:10-4a must be met: (1) the performance of the franchise must require the

franchisee to establish or maintain a place of business within the State of New Jersey; (2) where gross sales of products or services between the franchisor and franchisee shall have exceeded $35,000 for the past 12 months; and (3) where more than 20% of the franchisee's gross sales are derived from the franchise.  N.J.S.A. 56:10-4a.  Here, Plaintiff maintained its businesses exclusively in New Jersey.  *Compl*. at ¶¶ 2, 120.  In addition, Plaintiff asserts that the gross sales of products or services of all three stores had exceeded $35,000 for the past 12 months, more than 20% of which were derived from the franchise.  *Id*.  Based on these factual assertions, the NJFPA governs the Franchise Agreements at issue.  Significantly, this conclusion has not been disputed by Defendants.

Having determined that the agreements at issue here are subject to the NJFPA, the Court finds that Plaintiff has asserted valid NJFPA claims.  While Plaintiff has asserted common law causes of action, the genesis of Plaintiff's case is Defendants' alleged breaches of the Franchise Agreements which amount to various violations of the NJFPA.  Indeed, Plaintiff specifically alleges that Defendants violated the NJFPA by failing to provide a notice of termination, that Defendants improperly interfered with Plaintiff's attempts to sell its stores, and that Defendants made false statements to induce Plaintiff to invest in MBE franchises.  *See Compl*. ¶¶ 38, 119-134, 136.  Plaintiff further alleges that Defendants breached the Franchise Agreements by inflating certain royalties.  Following these alleged breaches, Plaintiff maintains that Defendants ultimately terminated the franchise relationship.  Based on these averments, Plaintiff has clearly asserted NJFPA violations – vis à vis a wrongful termination of the Franchise Agreements. *Compl*. ¶¶123-35; *compare Bonanno*, 2006 U.S. Dist. LEXIS 85131 at *13 (because plaintiffs withdrew their claims under the NJFPA (Count Eight), the court found that *Kubis* did not apply); *Anytime Fitness,* 2008 U.S. Dist. LEXIS 123209 at *9 (same holding).  Accordingly, I find that

Plaintiff has satisfied its burden of showing that the enforcement of the forum selection clause is against New Jersey public policy. As set forth in *Kubis*, this clause is considered presumptively invalid.

This presumption, however, can be overcome if the franchisor can satisfy "the burden of proving that such a clause was not imposed on the franchisee unfairly on the basis of its superior bargaining position." *Kubis*, 146 N.J. at 195. In that connection, the *Kubis* court opined:

> a franchisor could sustain its burden of proof by offering evidence of specific negotiations over the inclusion of the forum-selection clause and that it was included in exchange for specific concessions to the franchisee. Absent such proof, or other similarly persuasive proof demonstrating that the forum-selection clause was not imposed on the franchisee against its will, a trial court should conclude that the presumption against the enforceability of forum-selection clauses in franchise agreements subject to the [NJFPA] has not been overcome.

*Id*. at 627-28.

Seeking to rebut this presumption, Defendants rely on a recent case, *Innovative Tech. Distribs., LLC v. Oracle Am., Inc.*, No.11-1371, 2011 U.S. Dist. LEXIS 44930 (D.N.J. Apr. 25, 2011), wherein the district court granted a motion to transfer venue to the Northern District of California based on a similar forum selection clause. However, Defendants' reliance is misplaced. In *Innovative Tech*, the plaintiff, a New Jersey entity, filed a lawsuit against a California corporation alleging violations of the NJFPA. Relying on *Kubis*, the plaintiff there argued that the forum selection clause was unenforceable. The court disagreed and found that the defendant franchisor had established that the clause was valid. Crucially, in making that determination, the court made certain factual findings -- which are decidedly absent in this case -- that when the agreement was executed, the plaintiff was a $100 million company, represented by company's general counsel who negotiated favorable terms that were valuable to the plaintiff.

*Id*. at *6.  Based on these specific conclusions, the court found that the defendant had satisfied the burden of rebutting the presumption.  As a result, the court found that the forum selection clause in that case valid and transferred the matter to the Northern District of California.  *Id* at *7.

In this case, however, Defendants provide no evidence of the parties' negotiations or Plaintiff's financial status.  Rather, Defendants merely argue -- without any evidence -- that because Plaintiff is not an unsophisticated party, the possibility of litigating in California was clearly bargained-for in the Franchise Agreements.  These bare assertions are insufficient to meet the standards set forth in *Kubis*, as mentioned above.  The fact that Plaintiff entered into the Franchise Agreements - which is essentially the only evidence Defendants advance - is not sufficient to overcome the presumption against the validity of the forum selection clause in this NJPFA case.  Indeed, Plaintiff does not stand in the same shoes as the multi-million dollar franchisee in *Innovative Tech*.  Without the type of evidence required by *Kubis*, this Court cannot find that Defendants have met their burden.  Therefore, the forum selection clause, here, will not be given any weight in the Court's transfer analysis.[5]  Accordingly, having discounted the effectiveness of the forum selection clause, I will defer to Plaintiff's chosen forum of New Jersey unless other *Jumara* factors weigh in favor of transfer.  *See Windt*, 529 F.3d at 190.

### 2.  Whether the Claim Arose Elsewhere

Defendants argue that Plaintiff's claims arose in California because the Franchise Agreements were prepared by MBE employees at MBE's principal place of business in

---

[5] Defendants further argue that the forum selection clause contained in the three Franchise Agreements should also be construed as a waiver by Plaintiff of any objection to venue in California.  However, as the clause is considered to be invalid in this case, these clauses will not be construed as an effective waiver.  Finding otherwise would contravene the public policy concerns underlie the *Kubis* decision.

California. On a breach of contract claim, this Court has explained that it will "consider several specific factors that relate to where the claim arose, including (1) where the contract was negotiated or executed; (2) where the contract was to be performed; and (3) where the alleged breach occurred." *Advanced Technologies and Installation Corp. v. Nokia Siemens Networks US, L.L.C.,* No. 09-6233 (FLW), 2010 U.S. Dist. LEXIS 91370, at *22 (D.N.J. Sep. 2, 2010) (quotations and citation omitted).

While the contract -- a form contract -- was drafted in California, according to Ms. Harris, the owner of the Business Store, Inc., the negotiations of the Franchise Agreements took place in New Jersey with Defendants' area developer, who was located in New Jersey. *See* Harris Decl., ¶¶ 3-11. Plaintiff executed those agreements in New Jersey. Furthermore, there is no dispute that the performance of these agreements occurred in New Jersey; indeed, Plaintiff operated its franchise stores exclusively in Middlesex County, New Jersey. Finally, although Defendants claim that all the corporate decisions regarding the Franchise Agreements were made in California, the alleged harm as a result of those decisions was felt in New Jersey. Thus, based upon these reasons, I conclude that this factor weighs in favor of New Jersey.

### 3. The Convenience of the Parties and Witnesses

The convenience of the parties as indicated by their relative physical and financial condition must be weighed in determining a motion to transfer. *Jumara*, 55 F.3d at 879. Here, while MBE is located in California, it is a national company with an abundance of resources. As such, the Court has no trouble in finding that employees of MBE would be able to travel to New Jersey. More compelling, UPS is headquartered in Atlanta, Georgia, and therefore, its location on the east coast makes it more convenient for employees of UPS, relevant to the defense of this

litigation, to travel to New Jersey than California. Of course, New Jersey is certainly a more convenient forum for Plaintiff and its Owners.

With respect to witnesses, Plaintiff references over twenty-four witnesses whose testimony is pertinent to its claims. *See* Harris Decl. at 7-8. These witnesses all reside in New Jersey, and Plaintiff indicates that it would be burdensome and expensive for them to travel to California for this case. *Id*. Moreover, Plaintiff represents that certain witnesses would be unavailable to travel to California. On the other hand, Defendants do not provide any reasons why it would be inconvenient for their witnesses to travel to New Jersey, or that their witnesses would be unavailable if the litigation remains in New Jersey. In fact, Defendants have not specifically named any witnesses in their motion. Indeed, it appears that an important witness for Defendants is Mr. Dimino, UPS's area developer who negotiated the Franchise Agreements with Plaintiff, and he presumably still resides in New Jersey. Therefore, based upon these reasons, I find these factors also weigh in favor of New Jersey.

### 4. Location of Books and Records

This factor is considered by courts only to the extent that files could not be produced in the alternative forum. In this current electronic age, it is difficult to imagine that business files -- which are stored electronically -- cannot be produced in an alternate forum. Here, both parties argue that their records are located in their preferred forum; thus, I find this factor neutral because whether this case is transferred or not, one party would be required to transport their documents. *Accord Mercedes-Benz USA, LLC v. ATX Group, Inc.,* No. 08-3529, 2009 U.S. Dist. LEXIS 65023, at *4 (D.N.J. Jul. 27, 2009) ("The location of the disputed records is . . . neutral since there is nothing to suggest that the records, which are admittedly in electronic form, cannot be easily transmitted . . . .").

In sum, I conclude that the private interest factors weigh against transferring this action.

**C. Public Interests**

The public factors to be considered by courts include: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity case." *Jumara*, 55 F.3d at 879-80 (internal citations omitted).  Other public factors include, but are not limited to, "the unfairness of burdening citizens in an unrelated forum with jury duty." *Windt*, 529 F.3d at 192 (citing *Gulf Oil v. Gilbert*, 330 U.S. 501, 508-09 (1946)).  "In evaluating the public interest factors the district court must consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to plaintiff's chosen forum." *Delta Air Lines, Inc. v. Chimet, S.P.A.,* 619 F.3d 288, 300 (3d Cir. 2010) (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988)).  In this case, I do not find that any of the public interest factors move the needle in favor of transfer.

Defendants argue that the public interests weigh in favor of transferring this case because California law would govern this suit pursuant to the choice of law clause contained in the Franchise Agreements and therefore, the district court in Southern District of California is better suited to apply California law.  However, in my view, federal courts are accustomed to applying the law of various states, and Defendants have not raised any additional or special circumstances why the district court in California is better suited than this Court to apply California state law.  Thus, this factor is in equipoise.

Furthermore, I find that there are no significant court congestion differences between this District and the Southern District of California. Neither party provides evidence that the administrative difficulty resulting from court congestion weighs in favor of one forum over the other. Without more, I find that this factor is also neutral, considering the heavy caseload carried by both district courts. In addition, I find that the New Jersey community would not be unfairly burdened by jury service in this case. The alleged breach took place in New Jersey, and Plaintiff is a New Jersey corporation, maintaining its business exclusively in New Jersey. Given that the dispute is local to the community of New Jersey, the burden of jury service will not be unfairly imposed upon the citizens of New Jersey.

Finally, the public policy factor tips in favor of New Jersey, as explained *supra*. To reiterate, the NJFPA demonstrates a strong public policy that New Jersey franchisees have a forum to litigate against franchisors in New Jersey. *See Paradise Enterprise Limited v. Sapir,* 356 N.J. Super 96 (App. Div. 2002). Indeed, the NJFPA's legislative history reflects the concern that franchise agreements are often adhesion contracts in which franchisors pressure franchisees into agreeing to disadvantaged terms. As such, the central purpose of the Act is to "protect franchisees from unreasonable termination by franchisors that may result from a disparity of bargaining power between national and regional franchisors and small franchisees." N.J.S.A. 56:10-2. In this case, Plaintiff is the type of franchisee that the NJFPA intends to protect, and in that connection, New Jersey certainly has an interest in protecting its franchisees from unfair practices by out-of-state franchisors.

In sum, I conclude that the public factors also weigh in favor of New Jersey. Accordingly, having weighed all the factors, I find that a transfer to the Southern District of California is not appropriate.

## CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion to transfer venue.

Dated:  February 16, 2012                                         /s/        Freda L. Wolfson
                                                                                    Freda L. Wolfson, U.S.D.J.